We'll hear argument next today in Case 17-1026, Garza v. Idaho. Mr. Ali. Thank you, Mr. Chief Justice, and may it please the Court. In Flores, Ortega, a unanimous court held that where a defendant pleads guilty and instructs his trial counsel to notice an appeal, disregarding that instruction renders ineffective assistance in which prejudice is presumed. The Court reached that conclusion even though pleading guilty waives the vast majority of claims that could be raised on appeal, and even though most defendants who plead guilty do not ultimately succeed in their direct appeal. The Court correctly concluded that prejudice is presumed both because a defendant's disregard for the instruction to notice an appeal forfeits the entire direct appeal, and because the attorney then usurps a fundamental decision that rests with the client alone. Ginsburg. Mr. Ali, will you just describe the relief that you seek? Am I right that what you're seeking is reinstatement of the right to appeal? That's correct, Your Honor. I think that's a really critical point, because it shows that what Mr. Garza is requesting here, what Petitioner is requesting, is simply to restore the bargain that the party struck before his trial counsel usurped his fundamental decision to appeal. So all he is seeking is reinstatement of the right to appeal, so all he is seeking is reinstatement of the right to appeal. But what happens to the plea bargain? The plea bargain was conditioned on waiving the right to appeal. So I can see one argument that says all we're seeking is the right to appeal. We recognize that the plea bargain goes by the boards because it was conditioned on no appeal. So, no, that is not Mr. Garza's argument. The argument would be that the appeal would be reinstatement. All the parties before the Court agree that even though Mr. Garza signed an appeal waiver, that certain fundamental claims survive that appeal waiver. So when the appeal is reinstated, the plea agreement will remain intact, the appeal waiver remain intact. To succeed on an issue that is waived, Mr. Garza would have to, and we think he actually has, a colorable claim in this record that his appeal waiver was involuntary. And so all he is seeking to do, maybe this is the better way to describe this. Consider two similarly situated defendants, okay? Both sign a plea agreement. Both plea agreements contain an appeal waiver. Both defendants instruct their counsel to go ahead and perfect to notice an appeal. In the first defendant's situation, counsel follows that client's autonomous choice. He files a notice of appeal. All parties before the Court agree that an appeal will be perfected. He will be appointed counsel. He will get access to the record, which would be required to identify issues for appeal and make sure that the plea proceedings proceeded in a way that is lawful and legal and that the plea is valid. And then there will be judicial review, either of the merits of the claims raised, or if counsel's appellate counsel believes that there is no meritorious issues, the process in Anders will be followed and there will still be judicial review. Ginsburg. But he gets to keep the – I mean, this is a plea agreement that gave him fewer years than he could have been subjected to under the law. And so you say there was one judge who said he wants his cake and eat it, too. That is, he keeps what's good about the plea bargain and discards what's not good. That is, no right to appeal. Well, so, Your Honor, I think a couple points in response. It's important to recognize that simply noticing an appeal or, in this case, reinstating an appeal, it's hard to see how that alone breaches the plea agreement. And so the way this happens in practice is that when an appeal waiver is signed, the government gains what is effectively an affirmative defense that it can raise on appeal. It can choose to raise it. It's not jurisdictional. It's not self-executing. The government chooses to raise it and satisfies the court of appeals that the issue that appellate counsel has actually raised on appeal is, in fact, within the appeal waiver, then the government will succeed and there will be consequences, potentially, depending on what the plea agreement says the consequences should be. All of that is what we're saying this direct appeal requires. Alito, I think this – I thought this was the thrust of Justice Ginsburg's question. If it is ultimately determined that the appeal was in violation of the appeal waiver, then the plea bargain has been broken by the defendant. That's correct, Your Honor, yes. And it may be void. That's right. And let me just make a brief choice. And what breaches the appeal waiver? In other words, you said it's not the notice. What is it? It is raising an issue that is, in fact, within the scope of the appeal waiver. So everyone agrees, I believe, that it was never disputed, that there are certain limitations on the validity of the plea and enforceability of the plea. There are certain constitutional limitations on the circumstances in which the plea will or will not be enforced by a court of appeals. For instance, if the defendant is challenging that the sentence was imposed on certain unconstitutional considerations. And then, of course, there are the issues that are outside the scope of the appeal waiver, which can be certainly raised by the defendant without any sort of consequence. Are there any States? What if the issue that the defendant wants to raise is clearly within the scope of the appeal waiver? Now, he comes to the lawyer and says, I want to appeal because I'm not guilty. In other words, I think, you know, it was voluntary and all that, and it's not beyond the constitutional limits. I just am not guilty, so I want to appeal. So, Your Honor, a few responses. I think the first response I have is clear in whose view. This Court has always recognized that there's a role for the Court in that sort of distinction. And that's always been a possibility, whether there's an appeal waiver, whether it's Flores-Ortega, and it's just a guilty plea, the guilty plea waives all non-jurisdictional claims. So it's always a possibility, and courts have dealt with that, you know, for over 50 years under Anders, and it hasn't been a problem. And what it's provided is the protections that that decision was all about and has been applied by this Court several times since. The second response I have is you're going a little too fast, because I'm breaking that down. Okay. All right? Defendant comes to you, you're a competent attorney, and it says, I want to appeal. What does a defense attorney generally do first? He consults, correct? He tells the client, this is what the law says. You have a waiver in here, you shouldn't appeal, you run the risk of breaching the agreement, and the government could go back and rescind the agreement and put you into jail for a lot longer. Do you really want to do this? Now, client, isn't the client the one who has the right to appeal? Isn't that what we've said for dozens of cases? That's correct, Your Honor. The attorney can decide what to appeal, and so if the client tells you appeal, you put in your notice of appeal, and if you don't think there's a viable issue, you file an Anders brief and you tell the court there isn't. The defendant then is invited to tell the court what it thinks, right? And then the court makes the decision, correct? That's correct. With the client deciding whether he wants to rescind the plea agreement, nothing prohibits a defendant from rescinding a contract, correct? That's right, Your Honor, although I don't think that our argument is contingent on that, this idea of an autonomous right to breach. I think that is correct, though.  You said you had two answers to my question. What was the second one? Sure. And Justice Sotomayor touched on them, but let me just repeat them, so in a slightly different way. So the second answer is why what the defendant has identified as the issue matters. Because a defendant doesn't make the decision what issues will be raised on appeal. He makes the decision whether his objective is to appeal. And so what we would say is that when a defendant articulates to his attorney, his agent, if you will, that his objective is to show that the plea proceedings that just took place were unlawful, the attorney has no place telling that defendant that he would prefer to just substitute his own view, that the defendant go off, cede defeat, and go to prison. That is our position, and then that's why, as the Court recognized in Jones v. Barnes, the person who makes the decisions as to what issues will be raised is the appellate attorney. And so it would be illogical to say that a defendant's right to appeal, as the United States argument argues here, turns on his ability to articulate certain issues. And remember, Your Honor, we're talking about the notice of appeal stage here. So the record typically hasn't been ordered here. It certainly wouldn't have been ordered in Idaho, because that's triggered by the notice of appeal. So you're asking generally a defendant with limited education, his exposure to the legal system might be minutes, maybe hours, to potentially specify certain issues that might be in or outside the scope of his waiver, and then you're asking his agent to basically play judge and forfeit his appeal if he alone thinks that the words that came out of the defendant's mouth happened to fall within the waiver. Alito, I think your argument does ultimately depend on the proposition that the defendant has this categorical right based on autonomy to insist on an appeal and have an attorney perfect the appeal, file the notice of appeal, even if there is zero chance that the appeal will be found not to have been waived. I think — and maybe that's right, but I do think your argument depends on that. And I wonder how that is consistent with the way Flores-Ortega analyzed the question of whether the attorney was deficient in that situation. If there is such a right, then why wouldn't the attorney have the right to have the obligation to consult with the — with the client and to tell the client that the attorney was deficient? Instead, it went through a very complicated, fact-bound inquiry into whether what the attorney did or called for such an inquiry into whether what the attorney did was deficient. So I think there are two parts to your question. So first, as to whether our position is that — so let me answer it this way. Our position is that the determination of whether there are non-frivolous or meritorious decisions doesn't take place. It may take place in a preliminary fashion during the notice of appeal phase, but that's an issue for appellate counsel. And that risk, as I mentioned, that there would be no meritorious issue that is to be raised on appeal, was, of course, present in Flores-Ortega as well. Mr. Flores-Ortega had waived all non-jurisdictional claims that he had, and so there was very much a possibility of that there as well. And to answer the second part of your question about what the Court said in Flores-Ortega, the Court specifically acknowledged there that pleading guilty substantially reduced the number of claims that Mr. Flores-Ortega could bring. And in the very next sentence, it acknowledged the possibility of what we have here. It said that a defendant may also expressly waive some claims in addition to that. And the relevance that it recognizes, what we believe the relevance should be here, which is that the act of signing — of pleading guilty and of signing an appeal waiver represents an indication of finality, an interesting finality on the part of the defendant. And that's why few defendants will plead guilty, sign an appeal waiver, and then instruct their attorney to appeal in the first place. And on top of that, in addition to acting as an indication of finality on the part of the defendant, as the State and the United States acknowledge and, in fact, represent throughout their briefs, pleading guilty, signing an appeal waiver, and then having appellate counsel raise an issue that even might fall within the appeal waiver can have serious consequences for a defendant. And so it acts and has acted as a sort of natural check. And that's why there really is no evidence, or certainly we would have expected the United States to provide evidence to support its idea that there would be frivolous appeals, for instance, falling from Mr. O'Connor. Alito, I don't understand the nature of the right that you're asserting. If I could just come back to the Chief Justice's question and perhaps embellish it a little. So you have the — you have a defendant who is an expert on plea bargains and plea waivers, knows everything about it. This is a highly intelligent, educated person, and signs a plea — a plea agreement waiving issue A, and then as soon as the defendant is sentenced, says to his attorney, I want to appeal issue A. And I think your answer has to be that that is the right of the defendant and the obligation of the attorney to carry out that — the client's wishes. Am I right? That has to be your position. I think that's right, Your Honor. I think it's a largely unrealistic scenario for those defendants. Sotomayor, what do you do with the jurisdictions that permit a defense attorney to tell a client, I don't see there's a meritorious issue, but I'm going to give you the instructions on how to file your own notice of appeal? There are other jurisdictions, I think the majority, who require the attorney to file the notice of appeal and then an Anders brief. But what do we do with those that say, when you're instructed by your client to file your own notice of appeal and you can't do it because it's an ethical obligation — an ethical violation, you tell the client how to do it?  So let me just — Is that enough for you? Can I just clarify, this particular record, Idaho does specifically provide that if an attorney withdraws before the notice of appeal is filed, that the defendant will be provided with new counsel. And of course, it was the very representation of the defendant here that prevented the defendant under procedural rules from filing a notice of appeal himself. And so that's why we know it caused it to be. Sotomayor, the error here was the attorney did nothing and ignored claims to have done nothing. That's right. And ignored repeated inquiries about the appeal. And of course, we agree that counsel should have a conversation with the defendant and say, we think, you know, I believe, I don't have the record yet. He should caveat it. I don't have the record yet. This is a preliminary assessment during the short window, but I think it's going to be very difficult for you to argue around your appeal waiver to raise this issue that Justice Alito was describing. But he should still perfect the appeal, because what we're asking the attorney to do is a ministerial task here once the defendant has made a decision. And we know that. The United States knows that better than anybody. Title II of the U.S. Attorney's Manual tells U.S. attorneys, line attorney, if you have not heard back from the Solicitor General's office, you may have recommended that there is no plausible ground for appealing in this case. But if you don't hear back from the appellate section or the Solicitor General's office, file that protective notice of appeal. And the reason is that the plaintiff has not heard back from the appellate section. Alito But what are the practical differences between the consequences of the position you're advocating and what would happen if you were to lose this case? If you win in the situation where the attorney thinks there's no nonfrivolous claim to be raised on appeal after the plea waiver, the attorney, you say, we'll file an Anders brief, right? That's right. So, okay. That's one side of it. And then the other side, if you were to lose, then the defendant would not be entirely precluded from trying to take an appeal with respect to issues that the defendant thinks are outside of the plea waiver. The defendant could bring a collateral proceeding and argue that his attorney was ineffective for failing to take an appeal based on a plea waiver that didn't cover the issue. And the only difference I can see depends on State law, namely whether, and maybe there are other differences, and you'll tell me if I'm overlooking something, whether an attorney will be appointed for the defendant in the postconviction proceeding and whether there will be a more stringent standard of review. But if State law didn't – if State law provided an attorney and didn't provide a more stringent standard of review, what is the practical difference? So, Your Honor, of course, 92 percent of postconviction defendants across the country don't get counsel on postconviction review. But I think that one very important collateral consequence was left out in addition to – I think the difference in burdens is a significant one here. We're talking about not just civil burdens, but this Court's well aware of the added hurdles that goes along with habeas proceedings that a defendant would now have to go through, not because he made any mistake, but because his agent failed to undertake a ministerial task. But, sorry, to get to the other very significant consequence, the failure to preserve issues in – before a conviction becomes final by raising them on direct appeal can forever prevent a defendant from raising those issues collaterally. So in the Federal system, as this Court decided in Bowsley, to raise a voluntariness claim in a 2255 position, you have to have first asserted that on direct appeal. So, I mean, to make a very simple, if a defendant believes he has evidence that he could introduce on habeas to show involuntariness, okay, to show that his counsel misled him, et cetera, outside of the direct appeal record, if he doesn't get the direct appeal in order to preserve that issue, he will be prevented, unless he can prove actual mistakes. Breyer. Well, I guess what I left out is that the issue, the claim in the – in the collateral proceeding would be ineffective assistance of counsel. Well, so then we're attaching an additional burden just for him to assert his – his involuntariness claim. He's now going to have to show that it would have been – I take it to you to be saying that he could assert that it was ineffective not to raise involuntariness in the direct appeal. So now he has to show that it was unreasonable for counsel not to file it in the direct appeal and that it would have prejudiced him, and we suddenly are back to getting to the – all of the merits, all of what should have happened in the direct appeal in the first instance, and shouldn't have prevented the defendant from simply arguing these issues in his post-conviction petition without having procedurally defaulted it, simply because his State-appointed counsel, his agent, didn't undertake a ministerial task. And that is the question. Ginsburg. I would like to understand better what happens. What are the – so the attorney is obliged to file a notice of appeal, and then, as you said, in most States there is no right to an attorney on appeal. So that's it. The attorney files a notice of appeal, and then the defendant is just left there unrepresented. Oh, I'm sorry. No, Your Honor. An attorney has a constitutional right to counsel on direct appeal. In virtually all instances, when he's sent to post-conviction by virtue of his counsel's failure to notice the appeal, he will not have counsel. So that's very much a direct consequence of not filing the appeal. If, as we think the Court should, the – the bargain struck by the parties here is restored and Mr. Garza's appeal is reinstated, he will be appointed counsel under State law, and as is required by the Federal Constitution, and counsel will put forward arguments. And we think in this record, there are – But you want to – this is a question I started out with. You want to reinstate his right to appeal, and you're still – it's still not clear to me what remains of the plea bargain. So – Because if he had a right to appeal, he would not have had a plea bargain that says, I'm not going to appeal. So, Your Honor, when Mr. Garza signed this plea bargain with the State of Idaho, all – both parties understood that Mr. Garza was waiving his right to raise certain issues, you know, a scope defined by the language in the plea waiver – the appeal waiver, but was – could still raise several issues, which my friends do not contest he can raise on direct appeal. So he would notice the appeal. He would still be bound by the terms of his plea bargain, meaning the appeal waiver would still apply in that appellate proceeding, but he can still raise, of course, any claim outside the scope of the waiver, and that would be a determination for the court with the assistance of appellate counsel. And he can challenge, for instance, the voluntariness of it, whether the government honored its commitments under the plea agreement. All of those are issues that Idaho, all the Federal courts conclude can be raised in a direct appeal proceeding, even when you have signed an appeal waiver. So this – Because an appeal waiver never precludes any and all possible appeals. That is what is undisputed on this record. And that's what the Federal courts have concluded, that they're not categorical. And I think it's important to recognize that – to think about how unrecognizable the conception of trial counsel we're dealing with when we applied the United States or the States test here. Essentially, what their tests would have trial counsel do is listen to the words of the client and determine whether the words were the right words to be outside the scope of the waiver, and give up that client's best chance, simply because during the notice of appeal window, trial counsel can't come up with an issue or doesn't think the client said the right things, give up his best chance of proving his conviction of unlawful, which is the implication of him having instructed trial counsel to notice this. Sotomayor, get your take on the question of when you're in breach. You said you're not in breach when the notice of appeal is filed. And is that true no matter what the notice of appeal says? In other words, suppose the notice of appeal is an opportunity to lay out your claims, and you lay out claims that are within the waiver. Does that still, in your view, not breach the agreement? Yes, I think so, Your Honor, because in Idaho, for instance, the rules are very clear that even with respect to the issues you specify, and generally speaking in Federal court, we're talking about identifying the order you're appealing from. Parties aren't required to specify issues. In Idaho, insofar as you specify issues, it's very clear that you're not bound once the appeal has begun. So the way that would play out is that a notice of appeal would be filed. There wouldn't be a strong claim of breach then, because, as I'll agree, there are claims that could be raised which would not be breached, even if they were resolved on the merits. And the government would move to dismiss the claim with the expedient procedures that are available in Idaho in Federal courts. And if at that point, no particular issue can be raised that's outside the scope of the waiver, what happens in some of these cases is the defendant just decides to dismiss the appeal altogether, so no harm done. But if the only issues the defendant can identify are within the scope of the waiver, you've got a claim of breach. And the next question would be whether it's a breach.            Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. And how about if there's an Anders brief that raises issues within the scope of the waiver? Does that breach the defendant's bargain? Well, the way that Anders plays out is that counsel is required to file a brief, as I think Your Honor's question is suggesting, and the pro se litigant is also given an opportunity to file a brief under Anders, and those are reviewed by the court. You know, I think it's a – if the pro se litigant himself in his brief is asserting claims that are in the scope of the waiver, I think there would be a strong claim of breach in that instance. If counsel is not actually pressing claims within the scope of the waiver, and the government's generally not required to respond to Anders' briefs, right, so it's the attorney raising issues that are pointing the court in a very important way to potential issues in the case, but isn't actually asserting issues, I don't think that would be a breach. I don't think our position turns one way or the other on that position. But counsel – Are you – I'm sorry. No, please, go ahead. Are you – just to go through this, are you aware of whether the Federal system or State system would deny a defendant another attorney if under Flores-Ortega it's found that an attorney was directed to file an appeal, didn't do it, hence he was ineffective under Flores-Ortega? When the defendant went back down, would he or would he not get another attorney? I think he probably would. In this case, factually speaking, he would, because on appeal, Idaho provides that the State appellate defender comes in. I'm just asking because I'm not aware, at least from my old circuit, that we would have not appointed a new attorney once one has been found ineffective. Now, that new attorney could file an Anders' brief, could do anything permissible under the rules, but my point is I don't know enough about the other jurisdictions. I'd be sorely surprised that most wouldn't. I think that's right. And I just would add one thing, which is that these claims actually could go very well to that attorney's conduct, the attorney who is usurping his client's decision to appeal. So if we're talking about the voluntariness, counsel's performance at the plea hearing, et cetera, could be tied up in those. And that's all the more reason in this instance not to allow an attorney to override his client's autonomous decision to appeal. And if I could, Mr. Chief Justice. Roberts. If I might. Sure. Thank you. One quick question. You rely a lot on the autonomy of the client, and we certainly have a lot of cases saying, you know, a decision, whether to appeal or make a major decision like that, belonged to the client. Here, though, we have a complicating factor that the autonomy has already been expressed through the plea waiver, and it's presumptively correct given that it's a final judgment of a trial court at that moment, at least. What do we do about that? So autonomy runs both ways here in this particular instance. And to presume prejudice in this circumstance, is there some tension between that and the fact that we don't presume prejudice even when lawyers make really bad, obviously wrong, strategic, tactical decisions in cases all the time? How do we reconcile that where even in obvious circumstances we don't presume prejudice? And here, most of these cases are going to be non-prejudicial, right? So what do we do about those problems? So let me – I think there are two separate questions there, and let me try to answer them. So the State and the United States make the first argument you suggested, which is that autonomy has been exercised at time one when the waiver of appeal is signed. Now, of course, one can't claim to respect autonomy without looking at the actual autonomous decision of the State. But looking at it as a whole, it's complicated. It's muddled, right? I don't think so. Time one and time two are complicated. At time one, the autonomous decision is to waive certain claims. At time two, the decision is go file notice of appeal because I still have other claims. And to answer the second point really quickly, when this Court looks at a situation in which a proceeding has been provided to the defendant and there are certain errors, client's not entitled or defendant's not entitled to a perfect proceeding, then yes, in that circumstance, to presume prejudice, you look for those circumstances where prejudice is so likely that, you know, it should be presumed. Now, the United States all but concedes that that doesn't apply in this circumstance. If you look at the bottom of page 12, top of page 13, after they do all of the posturing saying you should be identifying the most likely circumstances, they say, oh, but the Court has also recognized that when you forfeit an entire proceeding, a proceeding which is a contingency or is an important part of reaching finality, that that's not the inquiry the Court goes through. Roberts. Thank you, counsel. Mr. Jorgensen. Jorgensen. Thank you, Mr. Chief Justice, and may it please the Court. My friend keeps referring to a waiver of issues, but there was no waiver of issues in this case. There was a waiver of a procedure. There was an appellate waiver. Thus, in similar situations like this where there is an appeal waiver, there has been a waiver of a proceeding, not just of those issues. And I think this case actually provides a very good example of that. The plea agreement in this case that was signed by Mr. Garza contains many provisions. Some of those provisions include that he would plead guilty to certain charges, that the State would not then bring up other charges and would dismiss an enhancement. Mr. Garza agreed to the particular sentence he would receive. The plea agreement lists many of the rights that are required to be given under Idaho's Rule 11, which is the substantive equivalent of Federal Rule 11. Thus, even without the appeal waiver, the State had basically assured itself of victory on appeal. It had already secured the waiver of many, many, many issues. In fact, all of the reasonable issues that could be done. Roberts. Well, many, but certainly not all. They haven't assured, didn't assure themselves of victory on appeal since there were arguments outside the scope of the agreement, including some that have to be available outside the scope of the agreement, that could have been the basis for an appeal. Well, that's correct. Insofar as it goes. And that's one of the reasons why this has to be a fact-by-fact analysis. In this case, Mr. Garza clearly did waive the appellate procedure to all of those issues that he could conceivably waive it to. So he waived an appellate procedure to address his sentences. He had no right to any appellate procedure to address his sentences. Had he filed the appeal, had his attorney filed a notice of appeal and raised the issues Mr. Garza wanted, a challenge to his sentence, the only thing he would have gotten was a preliminary proceeding to determine whether he was asserting a waived procedure. Sotomayor, would you address Flores-Ortego? Because the way it approached the issue was pretty clear. It said in deciding whether the counsel is ineffective, first you determine whether a defendant would have appealed. And it said there's two ways to make that determination. A, was there a plea waiver? If yes, then he wouldn't have appealed. Or second, did he tell the attorney he wanted to appeal? And this is the second of those. But I can't square your position with Flores-Ortego. Because Flores-Ortego seemed to accept as a working proposition that given that there is even in a guilty plea, there are waivers of some issues, but not others. That the question of whether a defendant would have appealed takes into account the plea waiver at that stage. But once the defendant tells an attorney to appeal, that's his choice. I don't know how to get around Ortega, Flores-Ortego. Well, first off, Flores-Ortega does not address that circumstance where there are both. It clearly says there's no duty to consult where there is a waiver. It also says that there is a duty to provide the appeal if it's requested. And there is no duty to provide the appeal if the client says that he or she does not want an appeal. So Flores-Ortega does not address the fundamental question. I don't know what's both here. This is the second part of Flores-Ortega. The attorney's first part says there's a plea waiver. If the defendant doesn't ask you for one, you don't have to consult. But once he asks you for one, you have to file a notice of appeal. This is just the second situation. Respectfully, Your Honor, I would say that where the client has given this type of conflicting guidance, in other words, this was a waiver that was secured through the direction of counsel. Counsel was involved with this, so counsel had some idea of what Mr. Garza's intent was at the time he signed the plea agreement. That Mr. Garza decided to change his mind, to have his cake and eat it, too, or to game the system, or however you want to phrase it, doesn't necessarily explain it. Sotomayor, you don't think the defendant who has a right to appeal has a right to appeal to even an Anders brief? Because that tells you why you can't appeal. In my experience, again, and I don't know if it's typical or not, Anders briefs are filed and most defendants don't respond. But occasionally you get a few who do. Sotomayor, if you forfeited that right to have someone explain to you the whys, you can't get it back under your position that you're not, you forfeited your right to appeal altogether. Our position is that in post-conviction, where we are evaluating the conduct of a defendant of counsel in making this choice, that we have to look at the totality of the circumstances. And in this case, the totality includes the waiver. The totality includes the specific instruction of the client. The totality includes the scope of the waiver and counsel's determination that his client was specifically asking him to seek an appeal that would address an issue within the scope of the waiver. Kagan, so on what you just said, I guess I was a little bit confused in your brief as to the scope of your argument. Suppose that the client had, you know, after doing the appeal waiver, but there are some issues that you could still bring, not very many, but some. And the client says, I want you to the attorney, I want you to appeal. And he does not give any further guidance. In other words, he doesn't say what particular issues or whether those issues are inside or outside the scope of the appeal waiver. He just thinks, I want to appeal now. Does he get to a – at that point, does the attorney have to take the appeal? Can you presume prejudice from the fact that the attorney has not taken the appeal? At that point, you can presume neither deficient performance nor prejudice, because that may, for example, originate a duty to consult with the client, to look at the case, to actually ascertain whether the client wants to try to vitiate the entire plea agreement, to ascertain whether the client really wants to just test the State and see if they will maybe not act on a direct breach of the plea agreement. There are several different things the client may be trying to achieve, and all that Mr. Garza alleged that he was trying to achieve at any point is an appeal of his sentences.  Yes. So I guess that – I had understood your brief as saying that as long as you don't specifically want to appeal something that's within the scope of the waiver, then the attorney does, in fact, have to file a notice of appeal, and you can say that there is prejudice when he doesn't. But you're saying that even if the client makes a kind of generalized, go file an appeal for me, I leave it to you, what, how, you know, I don't know the law, you go do it, and the attorney doesn't file anything, even then you would say that there is no presumption. Yes. We would say that there is no presumption. In other words, before the attorney could actually undermine the plea agreement, do something that would end up with the State bringing the new charges, possibly seeking to put Mr. Garza away for life, the attorney would have to secure Mr. Garza's approval of that course of action. But doesn't that run counter to our normal division of labor between clients and lawyers? Don't clients generally specify the end, I wish to appeal, and leave it to the lawyer to determine the means? And doesn't it become incumbent at that stage upon the lawyer to identify whether there are any viable issues for appeal, and come back to the client and say, there are some or there are not some? And a failure to do that, why isn't the failure to do that presumptively prejudicial? The failure to do that could conceivably be presumptively prejudicial, depending on our facts. And I guess in the question you just asked, you talked about the end. And I would suggest that the end is not the filing of the notice of appeal, but the ultimate goal of the client. If the client wishes to ultimately keep his agreement, and he only wants his sentences possibly reduced, and that just simply cannot be achieved because of the waiver's existence. Breyer, what is the answer? What is your answer to what I think people are making? It's a fairly simple argument, very clear, very simple. There are trials for this guilty plea. Now, we hope that at those trials or plea proceedings, there are very few errors. Indeed, we hope none. But a client goes to the lawyer and says, appeal. He has to appeal. Now, here we have a no appeal agreement, but there are some errors that could be made. We hope there are none or very few. But there could be some. So why shouldn't it be exactly the same rule? If you, client, say to the lawyer, appeal, he has to appeal. Now, if on examining it, he figures there's no decent issue here, he writes an Andrews brief. Now, why draw a line? Why complicate the law? Why make it more difficult for the perhaps confused, unknowledgeable defendant who occasionally is right? I mean, why? Well, first off, Strickland is the general standard. And all the others are not. It's exactly the same. We say on the ordinary case, no agreement. We say if the client asks you, you have to do it, even without prejudice, because he has been deprived of a lawyer at a critical stage of the proceeding, and we presume prejudice. Why not say identical thing? By the way, if he doesn't ask you, then if there really is a good reason, you should have appealed anyway. But we don't have to go into that, because that isn't in this case. Okay? So again, same question. Why draw such a line? For a couple of reasons. First off, the general Strickland standard is sufficient to catch those instances where there is a mistake, where trial counsel has not behaved in a manner that is acceptable, that meets those minimum constitutional requirements. And second off, generally where this Court will apply a presumption, it is under the expectation that applying that presumption will reach the correct result in most cases, most instances. Here, the presumption is going to lead to an incorrect result in most instances simply because the waiver is ultimately going to be enforced. So there is no reason to doubt in this case that the waiver would have ultimately been enforced. And it's certainly not a difficult burden to put on Mr. Garza and those like him to put some reason to believe the waiver would not have been enforced in relation to his appeal. Breyer. Breyer. That's disheartening, because we would hope that in trials and in guilty plea proceedings, there are also very few grounds for appeal. And you're saying, I see your point. Your point is, oh, there are a lot there, but there aren't many here. Hmm. I hope you see, I find that a difficult ground to use as making this distinction, if for no other reason that I have no idea if that's true or not. That what's true or not, Your Honor? That there are lots of grounds for appealing a trial. There are lots of grounds for appealing a guilty plea proceeding. But there are only a very few grounds for appealing when there is a waiver of appeal. I would hope in all those cases there are very few. I don't know. And so I find it hard to draw an opinion which said the reason you don't get exactly the same right is because you have fewer likely grounds for appeal. Well, I think that the right, again, it's not just a limitation of the issues you can raise on appeal. It is a waiver of the actual proceeding itself, except in certain limited circumstances. Is there any practical differences between the consequences of taking a hopeless appeal when there is no plea, when there is no appeal waiver, and the consequences of taking a hopeless appeal that is covered by a plea waiver? Yes, there is. And the reason is that, for example, had there been no waiver in this case and he wanted to raise his sentence, the Court would have dealt with it fairly summarily on the basis of, well, that's invited error, you lose. But that would have been, ultimately, a merits determination. Where there is a waiver and he says I want to challenge my sentence, then the Court applies, the waiver dismisses the case. You never even have any sort of ruling on the merits. You've never had a challenge to the judgment. You've only had a question of does the waiver prove disproced? Sotomayor, I understand it's a ruling on the merits. You have no case. Both of them are you have no case. How you don't understand there being a difference between what, I don't know if it was you or the government, who suggested threshold and merit issues. It's a decision on the appeal. A motion to dismiss is on the merits. Well, I think that a motion to dismiss is on the applicability of the waiver. In other words, does the waiver kick in to foreclose the appeal? And that's a different question than getting the full panoply of plea rights or of appeal rights, excuse me, where you get to the, you do get to the merits, to the briefing, you can assert your issues through the briefing and ultimately get a written decision that will either affirm or reverse the judgment. Counsel, in addition to Justice Breyer's question of why complicate the law, or on top of that question, what practical harm has there been in those jurisdictions, those areas that have applied the presumption? Because I haven't seen much evidence of practical problems from the presumption. Well, it is true that most courts deal with these fairly quickly and summarily up front, but we would argue that that's a reason why there shouldn't be this generalized rule. A Brightline rule that's going to just simply get that is probably not a good Brightline rule. But it's very simple, I think you're agreeing, for the court when they get an appeal. So to pick up Justice Ginsburg's point, if the appeal is reinstated, you get the appeal. Well, most issues are probably going to be within the scope of the waiver, and then there might be, in some cases, something outside the scope of the waiver. Oftentimes those are not meritorious, of course, and are quickly dealt with. Sometimes they are, though. It seems pretty simple for most appellate courts to deal with that, and I'm not sure there's any evidence of a problem, and if there's not evidence of a problem, why complicate the law, as Justice Breyer says? What the State gets out of these types of agreements is the procedure itself. In other words, there's finality of judgment that the State is trying to do. But I'm sorry to interrupt, but I think you acknowledge that the appeal waiver gives up the appeal except in certain limited circumstances. That goes to my point earlier, an appeal waiver never gives up everything. It can't. It can't. And because it never can give up everything, you've never actually forfeited the entire procedure. That's right. But it would require a minimal showing to show that, ultimately, the appeal that the was one of these things outside of the scope of the waiver. And I think that that's the crucial difference here. Mr. Garza, in the postconviction case, was asked specifically, what issue would you raise on appeal if I reinstate your appeal rights? The district court asked him that decision. And Mr. Garza's answer was, my sentence. So it would not be an onerous burden for somebody with an appeal waiver challenging the decision of counsel to say, you know what, I can convince this Court that I would have raised one of the automatically excluded areas. I think Mr. Ali said that Garza would like to raise the issue of the voluntariness of his agreement. Is that still an open question? No, Your Honor. He never said that in the State courts. Has there been a decision on that issue by any State court? The district court, I believe pages 31 through 32, or excuse me, 30 through 32a of the appendix on the petition, the district court specifically asked Garza, what issues do you wish to raise on appeal? If we reinstated your right, what would you pursue? And he specifically limited it to the sentence issue. And specifically, the Court noted that Mr. Garza had not raised any direct challenge to the waiver. Sotomayor, I'm looking at page 5 of the brief, the blue brief, and so you didn't write it, but it says that Mr. Garza promptly filed a pro se petition for post-conviction relief. In it, he asserted that his trial counsel rendered ineffective assistance by disregarding his instructions to file a notice of appeal. Mr. Garza further argued that he did not knowingly and voluntarily plead guilty and that he had entered an involuntary plea. Yes. He did. May I assume the following? That that's what he wanted to appeal, but his attorney, by never conferring with him, didn't get that information. Your answer would be if the attorney wasn't told that by his client because the attorney never asked his client, that that's not ineffective assistance of counsel in this situation where the attorney asked him to file a notice of appeal. It might have been ineffective assistance of counsel if that is in fact what he wanted, and his attorney failed to ascertain that through consultation. If I may continue. Just briefly. Very briefly. Pages 30A through 31A of the appendix to the petition. Garza has already dismissed claim that his pleas were involuntary. Had he contended, he did not appreciate or understand the appeal waiver, so he wanted to enter his pleas, but Garza has never so contended at any stage of these post-conviction cases, and the footnote also addresses that. Thank you, counsel. Mr. Keenum. Mr. Chief Justice, and may it please the Court. A prejudice inquiry under Strickland is the normal tool for identifying which final criminal judgments should be reopened based on counsel's ineffective assistance, that is, cases where the harm to finality is justified by increased accuracy and reliability. The Court should not abandon that case-specific inquiry here, where any benefits would exist only in exceptional cases. A lot of the focus of argument today has been on the question whether counsel has an obligation to file a notice of appeal under various circumstances. That is the question of deficient performance. I'd like to refocus the Court, if I may, on the question of prejudice, which is the one that we have focused on in our brief. The question there, we think, is governed by Flores-Ortega. Strickland always requires for showing of prejudice that there be case-specific circumstances that show that the defendant was prejudiced by his counsel's errors. What Flores-Ortega tells us is that once you know that the reason that the defendant lost out on an appellate proceeding to which he had a right because of what counsel did, that automatically is prejudicial. You don't have to know whether he was going to win his appeal. That answers the question here, because there's undoubtedly a statutory right to appeal. That's right. And the waiver is only good if it's asserted. And often the government fails to assert it in a timely fashion in the courts of appeals, and the courts of appeals just disregard the waiver altogether. It is in the nature of an affirmative defense that you lose if you don't use. So why isn't it the denial of a proceeding to which the defendant is entitled by law? So the question is not merely whether he would have filed a notice of appeal and submitted some brief that the Court would have read if we know, based on the circumstances, that the Court would just have thrown out the proceeding at the threshold. Breyer. But it says in Flores-Ortega, maybe I only got it in part, but it says the Court noted failure to file a notice of appeal is, quote, the complete denial of counsel during a critical stage of a judicial proceeding, end quote, a situation ordinarily requires a, quote, presumption of prejudice, end quote. That's right. But elsewhere it's specific. So I take that to mean if your client asks you, the lawyer, file a notice of appeal, you've got to do it. And if you don't do it, it's automatically prejudice. Now, isn't this the question was, well, why isn't that exactly the same here? Now, which part am I wrong? Am I wrong that that's what Flores-Ortega says, or am I wrong that this is the same? So Flores-Ortega certainly says what you're talking about, but it also clarifies elsewhere that the type of appeal to which we're talking about is an appeal to which the defendant has a right, which is to say a merits proceeding. If a defendant, for instance, asks to appeal to the wrong court, he wants to appeal to the Ninth Circuit rather than to an Idaho State appellate court, no one would say that if his attorney declines to file that notice of appeal, knowing that it would just be tossed out without any consideration of the merits of his claims, that the defendant has been prejudiced in the sense that the Sixth Amendment cares about. Because Strickland uses the term prejudice. Because he has no legal right to that kind of appeal. That's correct. But he does have a legal right to appeal to the court, relevant court of appeals. That is a statutory right. Now, perhaps Congress could change that and say in appeal waivers cases, you know, I'm sure the government could go seek that. But for now, at least, there's a statutory right to appeal to the right court. So back to Justice Breyer's question, I think we've removed that complication you've added. Well, let me give you another example. Let's say 5 years after his conviction, the defendant says to his attorney, I want to file a notice of appeal. And there's no jurisdictional defect because the timing of a notice of appeal in a criminal case is not jurisdictional. If the attorney declines because he knows that there would be no consideration of the merits. Again, I think that's just evading the hypothetical respectfully, counsel. There may be no legal right in those instances. I'm talking about a case where it's the right court in the right period of time, and there is a statutory right. I think that's what Justice Breyer is trying to aim at. Maybe you could, too. And you also might have some good arguments. The chances are you don't. Let's look at the Anders briefs filed in those cases where there was no waiver. I mean, you know, none of those cases did he have a really good argument, or the lawyer wouldn't have filed an Anders brief. So here's why we think it's different in a case where the defendant just has bad arguments of the sort that might get asserted in an Anders brief. You still know there that if a notice of appeal is filed, that there will be review on the merits. He may lose, but he's still going to have his claims reviewed, and if the court of appeals disagrees with him, it's going to affirm. It's not going to dismiss the appeal, which is what happens in the case of an appellate waiver. And so what Flores-Ortega tells us is we care about the type of error that would undermine our faith in the reliability of the proceedings. But if all you've lost out on is an opportunity to have your claims tossed out without any merits review whatsoever, Flores-Ortega does not tell us that that type of loss counts as prejudice. Alitoson Do you think we can get anything out of the question whether the defendant has a legal right to file something there? Isn't it the case that under statutes and under rules, defendants have the right to do all sorts of things during a criminal proceeding, but for almost all of those, the decision is made by the attorney? That's correct. The question is more about whether the loss of a proceeding undermines our faith in the reliability of the criminal judgment. If the answer there is no, then the defendant hasn't lost anything that the Sixth Amendment was designed to protect. Breyer, this I just don't understand. We have a trial, or a guilty plea. Defendant says appeal. He files an Andrews brief. That's correct. And what you're saying is the court will read it, he has a chance to file his own, and then it will write the word affirmed. All right? So now what we have is this case. He might have some good arguments. You know, he might. But the lawyer thinks not. And the lawyer says, I file an Andrews brief, so I've looked through it, there's nothing to it, and they don't write the word affirmed? I usually don't write the word affirmed. Rather, that they write the word dismissed? I've never seen that, you know. I've never seen that. But that doesn't mean it isn't true. Well, just so you know, the court of appeals writes the word dismissed and not the word affirmed? That's right. In our brief, we have a footnote citing decisions from every circuit in the Federal system in which they dismiss. All right. So that's what the difference really comes down to in your mind. It's that is one technical difference, but I think it also goes to the question, are they reviewing the claims on the merits? When there's a loss of a proceeding in which no merits review occurs, that doesn't undermine our faith in the reliability of the proceedings. It's also important to note that an appellate waiver doesn't just make the likelihood of success on appeal lower. It's an additional obstacle that would prevent the defendant's claims even from getting consideration. And so if we want to rule out that obstacle, we have to do some additional investigation. We can look either to direct evidence that the defendant was on the verge of appealing some claim that would have gotten merits consideration, or if we don't have direct evidence based on communications or contemporaneous evidence, we can look to the existence of some non-frivolous claim outside the scope of the waiver that the defendant had, which provides circumstantial evidence that had a notice of appeal been filed, he would have appealed some claim that got merits review. I'm just not fit with the usual breakdown of responsibilities between client and lawyer, where we normally assume that clients only specify objectives or ends, and that the most of our Sixth Amendment jurisprudence, to pick the appropriate means. So if a client says, I wish to appeal anything that's possible, why isn't that a necessary directive to the lawyer to figure out which possible things fall outside the waiver or those sorts of things? Why does a client have to come forward and identify the winning argument? So, again, we're not talking about counsel's obligations or the client's obligations on direct review. When we're on collateral review, trying to figure out why it was that the defendant either was or wasn't harmed, the normal burden under Strickland is that a defendant who seeks to reopen an otherwise final judgment has the burden in all cases to establish that he was prejudiced. Now, it may be that as a theoretical matter, any defendant could always challenge something outside the scope of his waiver. He could always challenge, for instance, whether his plea was voluntary. But we shouldn't start with the assumption for all cases that all defendants are intending to challenge, for instance, the voluntariness of their pleas. Not only does that invert the normal burden of proof under Strickland, it's contrary to experience. It's also contrary to what this Court has said about frivolous appeals. In terms of experience, does the Federal Government think that the experience of those circuits that have applied a presumption of prejudice has shown a problem? So it's a problem only that it leads to the reinstatement of additional frivolous appeals. We're not saying that it's such a big problem that the sky is going to fall in, but it does create a couple of practical problems. Number one, in addition to additional frivolous appeals, there are a lot of circuits that don't act on motions to dismiss on the basis of waivers until after full briefing on the argument – on the merits, which means the government loses a lot of the benefit of its bargain. The second one is that when you're on collateral review, you end up focusing just on the evidentiary question, the very difficult evidentiary question, whether the defendant actually asked for a notice of appeal, which can be burden-symptom. Sotomayor, I'm sorry, those circuits don't believe in Anders' briefs? The Anders' brief doesn't answer the question, because it does. So all circuits believe in Anders' briefs, but an Anders' brief requires you to be It doesn't file an Anders' brief. It means that he or she believes they have some viable, potentially viable argument. Right? So the fact that the Court requires briefing on that, why is that an additional burden? It's an additional burden to require the government to address the merits when really the case should be thrown out at the threshold, because all of the defendant's claims have been waived. Thank you, counsel. Two minutes. Mr. Ali. Ali. Thank you, Mr. Chief Justice. I just want to really make one point, maybe with two parts, responding to the United States' suggestion that really we're dealing here with a formalistic or symbolic appeal, and I just want to do it on the context of this record with the real practical consequences this could have for Mr. Garza. As we note on page 32 of our opening brief, Mr. Garza here has a very colorable, I think, meritorious claim that his appeal waiver was involuntary. We address the specific facts there, which include shortly before his second plea, indicating on a form that he was not waiving his right to appeal, going into two plea hearings, neither of which inquired as required under State law under Rule 11, into whether he was waiving his right to appeal, and then being advised three times once in the hearing and twice in judgments that he had a right to appeal. And I just want to note that that claim could not be raised on postconviction. Justice Alito, you asked whether it was raised and dealt with. The answer is no. The very pages that were referred to you, that you were referred to by the State, the district court says, I do not understand Mr. Garza to be challenging the voluntariness of his appeal waiver. I see his pro se petition as only addressing the voluntariness of his plea agreement as a whole. So even though the lack of advice at the Rule 11 hearing would seem to support his claim, I will not consider it that way. And if I could just finish in summation by saying that the substantial majority of the circuits have adopted the rule Petitioner proposes in this case, those circuits account for approximately 95 percent of the guilty pleas in the Federal system, and no problems have been shown with that rule. We ask the Court to adhere to it, whereas here, a defendant satisfies a court that he wanted to challenge the lawfulness of the proceedings he got, his State-appointed attorney, his agent, has no place substituting his own view that his client should simply cede and go off to prison. Thank you. Roberts. Thank you, counsel. The case is submitted.